LAW OFFICE OF
**JOSHUA BLACK**
PLC

Joshua Black, #032241
Timothy Rosini, #036540
Law Office of Joshua Black, PLC
2999 N 44th St, Suite 308
Phoenix, AZ 85018
(623) 738-2225 (p) • (623) 670-5934 (f)
josh@azemploymentlawyer.com
timothy@azemploymentlawyer.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Jennifer Hawes-Trostle**, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>**TRAX International. INC**, an New Mexico Corporation<br><br>　　　　　　　　Defendant. | No.<br><br>**COMPLAINT**<br>**JURY TRIAL REQUESTED** |

Plaintiff Jennifer Hawes-Trostle, ("Plaintiff"), by and through undersigned counsel, hereby alleges as follows.

## NATURE OF ACTION

1. This is an action under Arizona Revised Statues ("ARS") against TRAX International Corporation, ("TRAX") for its unlawful employment practices of retaliation based on Title I and Title V of the Americans with Disabilities Act of 1990, to correct unlawful employment practices perpetrated against Hawes based on her disabilities. This

1

action is brought to provide appropriate relief to Plaintiff who was adversely affected by such practices.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331.

3. The unlawful employment actions alleged herein were committed in whole or in part within the jurisdiction of the United States District Court for the District of Arizona.

4. Venue is proper in this District under 28 U.S.C. § § 1391 (b) and (c) because all or a substantial part of the acts or omissions giving rise to the claims occurred in the state of Arizona. Plaintiff was employed by Defendant in this District.

## PROCEDURE

5. Plaintiff has satisfied all procedural requirements for commencing this action.

6. On November 2, 2020, Plaintiff filed a charge of discrimination with the Arizona Attorney General's Office, Civil Rights Division and the Equal Employment Opportunity Commission, contending that she has been discrimination against in violation of the Arizona Civil Rights Act and Title VII of the Civil Rights Act of 1964.

7. On March 4, 2022, the Equal Employment Opportunity Commission issued a Notice of Right to Sue with regard to Plaintiff's charge.

8. Plaintiff has filed this lawsuit within 90 days of the date she received the Right-to-Sue letter.

## PARTIES

9. Plaintiff is a United States Citizen who resides in Arizona.

10. Defendant is a registered corporation operating within the greater Yuma area as a Professional and Technical Service Provider company.

11. At all relevant times, Plaintiff was an "employee" of Defendant as defined in the FMLA, ADA and ARS provisions.

12. At all relevant times, Defendant was the "employer" of Plaintiff as defined in the FMLA, ADA and ARS provisions.

13. At all relevant times, Defendant has been a corporation organized under the corporate laws of Arizona and doing business in Arizona.

14. At all relevant times, Defendant has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made, or business done is greater than $500,000.

## STATEMENT OF FACTS

15. Plaintiff worked at TRAX for approximately eight months.

16. Plaintiff last worked as a Quality Assurance Training Coordinator.

17. Plaintiff had to visit her doctor in December 2019 because she had severe back pain.

18. In January 2020, her back pain continued to worsen.

19. Plaintiff sought medical treatment and a doctor prescribed corrective surgery to take place the following month.

20.  On January 6, 2020, Plaintiff informed Robert Vogt ("Vogt"), QA/CPI Manager, that she required surgery.

21.  Vogt advised Plaintiff that he had spoken with Megan Dubois ("Dubois"), Human Resources Coordinator, who stated Plaintiff could not miss any work if she wanted to qualify for FMLA.

22.  Vogt further advised Plaintiff to contact ("Dubois") to get more information on how to apply for FMLA and how to get approved for FMLA.

23.  Plaintiff contacted Dubois on January 13, 2020. In her communication, Plaintiff referenced a surgery prescribed by her surgeon.

24.  Plaintiff also advised she had provided the FMLA paperwork to her surgeon to complete and submit to TRAX on Plaintiff's behalf.

25.  Dubois never personally responded to Plaintiff's request for information.

26.  On January 27, 2020, Plaintiff received a response from TRAX regarding her request for FMLA.

27.  **Myrna Davis ("Davis"), Human Resources, prepared and transmitted the documentation to Plaintiff.**

28.  **On the first page of the documentation, Davis check the box titled "Eligible for FMLA."**

29.  **Later in the documentation, Davis advised that Plaintiff could us PTO for the first four days of the leave.**

4

30. **These two statements, combined with the document, indicates that TRAX not only declared Plaintiff as eligible for FMLA, but that TRAX also approved of the leave.**

31. When Plaintiff received approval for leave, she proceeded with the surgery as planned.

32. TRAX recognizes in its own form that an employee is considered to have a disability she has "a physical or mental impairment or medical condition that substantially limits a major life activity, or if you have a history or record of such impairment or medical condition."

33. **Relying on this approval of her FMLA leave request, Plaintiff maintained the scheduled date of her surgery.**

34. **On February 10, 2020, the day before her surgery, Plaintiff received a call from Dubois to head over to her office.**

35. **Dubois demanded that Plaintiff make a choice between postponing her surgery until she had been with TRAX for a year or keep her employment.**

36. Plaintiff argued that she was already approved for FMLA leave by TRAX as indicated in the previously mentioned documents.

37. Dubois stated Plaintiff was not qualified for FMLA.

38. **Dubois demanded that Plaintiff make a choice between postponing her surgery until she had been with TRAX for a year or lose her employment.**

39. Megan blatantly told Plaintiff "it was either your health or your job."

40. Plaintiff argued that **she was already approved for FMLA leave by TRAX**.

5

41. Plaintiff advised this was an essential surgery that could not be postponed.

42. **Relying on TRAX's prior approval of her FMLA, Plaintiff continued with her needed surgery.**

43. **TRAX immediately retaliated against Plaintiff for using FMLA—that TRAX approved—and terminated Plaintiff's employment.**

44. **This termination of employment is retaliatory in nature and therefore violates the FMLA.**

45. TRAX also made no effort to accommodate Plaintiff under the ADA.

46. These actions by TRAX were retaliatory in nature and are prohibited under federal law.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

47. Plaintiff alleges the preceding allegations.

48. An employer is prohibited from discriminating against a qualified individual with a disability in all phases of employment, including termination of employment.[1]

49. To establish a prima facie case under the ADA, an employee must prove: (1) that he or she is a disabled person within the meaning of the ADA; (2) that he or she is qualified, that is, with or without reasonable accommodation, which he or she must

---

[1] *See* 42 U.S.C. § 12112 (a)-(c).

describe, he or she is able to perform the essential functions of the job; and (3) that the employee has suffered adverse employment action because of the disability.[2]

50. An Employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations, which it failed to do.[3]

51. TRAX had notice of Plaintiff's disability as of January 2019.

52. Since that time TRAX engaged in unlawful employment practices at its Yuma County, Arizona, facility, in violation of Section 102 of Title I and in violation of Title V of the ADA, 42 U.S.C. § 12112(a).

53. Plaintiff was not provided reasonable accommodation.

54. Plaintiff provided notice of her disability **prior to her termination and requested reasonable accommodation from TRAX**.

55. Federal law is clear: once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate accommodations.[4]

---

[2] Americans with Disabilities Act of 1990, § 2 *et seq.*, 42 U.S.C.A. § 12101 *et seq.*
[3] *See Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001); *Barnett v. U.S. Air,* 228 F.3d 1105, 1114 (9th Cir. 2000).
[4] *See Humphrey v. v. Memorial Hospitals Ass'n,* 239 F.3d 1128, 1136 (9th Cir. 2001); *Barnett v. U.S. Air,* 228 F.3d 1105, 1114 (9th Cir. 2000).

56. Plaintiff provided a physicians to TRAX explaining the nature of her disability.

57. Plaintiff's physician note shows that TRAX had notice of Plaintiff's disability prior to termination, yet still retaliated by terminating her based on factors contributing to her disability, and continually failed to provide reasonable accommodation(s) in violation of the ADA.

58. These discriminatory acts harmed Plaintiff in the terms, conditions, and privileges of her employment.

59. The result of these unlawful practices were to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee.

60. These acts were carried out by the employer, against Plaintiff, because of Plaintiff's disability.

61. The unlawful employment practices complained of above were intentional.

62. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

63. By acting as aforedescribed, TRAX acted with malice or with reckless disregard for Plaintiff's rights, causing Plaintiff damage—including the loss of her employment—and entitling Plaintiff to damages in an amount to be proven at trial.

64. Plaintiff is entitled to an award of reasonable attorney's fees under Title V, Section 505, of the ADA, 42 U.S.C. § 12101 et seq.

# COUNT TWO
## VIOLATION OF RIGHT TO FAMILY MEDICAL LEAVE ACT

65. Plaintiff incorporates each and every allegation above as fully set forth herein.

66. Plaintiff informed her supervisor of a mandatory surgery necessary to ease pain she was suffering in her back and avoid long term complications.

67. TRAX provided notice to Plaintiff she was eligible for FMLA leave, *and* approved Plaintiff's leave.

68. **In reliance on this approval, Plaintiff scheduled her much needed surgery and informed TRAX she would be using the pre-approved FMLA leave.**

69. The day before the scheduled surgery, TRAX contacted Plaintiff and demanded Plaintiff postpone the surgery.

70. TRAX threatened to terminate Plaintiff's employment if she did not cancel the surgery she needed.

71. **Plaintiff chose her health and TRAX retaliated against Plaintiff for using pre-approved FMLA leave by terminating her employment.**

72. On January 6, 2020, Plaintiff provided formal notice Robert Vogt ("Vogt"), QA/CPI Manager, that she required surgery.

73. Vogt informed Plaintiff that he had spoken with Megan Dubois ("Dubois"), Human Resources Coordinator, and told Plaintiff that she was not allowed to miss any work time if she wanted to qualify for FMLA.

74. Vogt further advised Plaintiff to contact Dubois to get more information on how to apply for FMLA and how to get approved for FMLA.

75. Plaintiff reached out to Dubois on January 13, 2020. During the call, Plaintiff referenced a surgery prescribed by her surgeon.

76. Plaintiff additionally advised Dubois that she provided the FMLA paperwork to her surgeon to complete and submit to TRAX on Plaintiff's behalf.

77. On January 27, 2020, Plaintiff received a response from TRAX regarding her request for FMLA.

78. Myrna Davis ("Davis"), Human Resources, prepared and transmitted the documentation to Plaintiff. **On the first page of the official documentation, Davis checked the box titled "Eligible for FMLA."**

79. Subsequently, within the documentation, Davis notified Plaintiff she could use PTO for the first four days of the leave.

80. **These two statements, combined with the document, indicates that TRAX not only declared Plaintiff as eligible for FMLA, TRAX also approved of the leave.**

81. **Relying on this approval of her FMLA leave request, Jennifer maintained the scheduled date of her surgery.**

82. On February 10, 2020, the day before her surgery, Plaintiff received a call from Dubois to head over to her office.

83. Dubois abruptly demanded that Plaintiff make a choice between postponing her surgery until she had been with TRAX for a year or keep her employment.

84. Plaintiff argued that she was already approved for FMLA leave by TRAX as indicated in the previously mentioned documents.

85. Dubois stated Plaintiff was not qualified for FMLA even though plaintiff had been approved by TRAX leading up to the day of the surgery.

86. Plaintiff had continually maintained to all her contacts at TRAX that this surgery was very much needed and could not be postponed.

87. **Relying on TRAX's prior approval of her FMLA, Plaintiff continued with her needed surgery.**

88. TRAX immediately retaliated against Plaintiff for using FMLA—that TRAX approved—and terminated Plaintiff's employment.

89. This termination of Plaintiff's employment is retaliatory in nature and therefore violates the FMLA.

90. Dubois never personally responded to Plaintiff's request for more information or an explanation

91. Plaintiff exercised her right to use FMLA leave as a qualified employee.

92. Plaintiff's request for FMLA leave was wrongfully denied due to Defendant's misrepresentation of facts.

93. Defendant further retaliated against Plaintiff for requesting FMLA leave.

94. Plaintiff incorporates each and every allegation above as fully set forth herein.

**COUNT THREE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

95. Plaintiff incorporates each and every allegation above as fully set forth herein.

96. Plaintiff was suffering from severe back pain and TRAX had notice of Plaintiff's pain and suffering.

97. Plaintiff was advised she needed surgery to ease her back pain and daily discomfort.

98. TRAX was aware of Plaintiff's scheduled surgery and the day before the surgical procedure, threatened that Plaintiff would be terminated if she did not postpone the required medical procedure.

99. TRAX knew or reasonably should have known that their threats to Plaintiff in that situation would cause Plaintiff emotional distress and serious anxiety.

100. The wrongful acts of TRAX were so outrageous in character, so shocking in nature, so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable.

101. Said acts were intended to cause Plaintiff severe emotional distress, or carried out in reckless disregard of the near certainty that such a distress would result from the wrongful acts, and as a direct and proximate result of said acts Plaintiff has suffered extreme emotional distress.

102. TRAX threatened to terminate Plaintiff's employment.

103. TRAX then terminated Plaintiff's employment.

104. TRAX's decision to terminate Plaintiff's employment was due to its violation of failing to provide reasonable accommodations pursuant to the ADA, and violating Plaintiff's FMLA rights.

105. As a direct and proximate result of TRAX's actions, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## DAMAGES

106. As a direct and proximate result of TRAX's violations of Plaintiff's protected rights in each of the above-mentioned claims for relief, Plaintiff suffered and continues to suffer from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc. Plaintiff is entitled to compensatory damages to make her whole.

107. As set out above, TRAX's actions demonstrated a malice to harm Plaintiff and a reckless disregard for the protected rights and well-being of her. Thus, Plaintiff is entitled to punitive damages.

108. Plaintiff is entitled legal fees and costs of this action and previous charge with the Equal Employment Opportunity Commission, including attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k);

109. WHEREFORE, Plaintiff Hawes respectfully prays for judgment against Defendant TRAX, and asks this Court to:

110. (A) Award Plaintiff compensatory damages for her emotional distress, physical illness, medical expenses, loss of pay and any other appropriate relief to make Plaintiff whole and compensate her for TRAX's adverse employment actions;

**111.** (B) Award Plaintiff legal fees and costs of this action and previous charge with the Equal Employment Opportunity Commission, including attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k);

**112.** (C) Award Plaintiff punitive damages; and

**113.** (D) Award Plaintiff other legal and equitable relief as this Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

**RESPECTFULLY SUBMITTED** this 12th day of April 2022.

*Law Office of Joshua Black, PLC*

By: /s/ *Joshua C. Black*
Joshua C. Black
2999 N 44th St, Ste 308
Phoenix, AZ 85018
*Attorneys for Plaintiff*